IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CT-3054-BO

**Jesse Lee Karrick**,

        Plaintiff,

v.

**Warden Washington,** *et al.*,

        Defendants.

**Order &
Memorandum & Recommendation**

      In May 2014, Plaintiff Jesse Lee Karrick was taken to the segregation unit of the Warren Correctional Institute as a result of allegations that he used profanity towards a member of the prison staff. Upon his arrival in his cell in the segregation unit, Karrick refused to cooperate with jail staff in the removal of his handcuffs. Defendants Applewhite, Rivers, Shannweiler, and Hunt subsequently entered Karrick's cell to forcibly remove his handcuffs. Karrick alleges that jail staff punched him, choked him, and slammed him into the edge of his steel bed. He claims that he suffered a laceration to his head and was knocked unconscious as a result of the force used by the Defendants. Prison staff transported Karrick to a local hospital where three staples were needed to close the wound on his scalp. Karrick now suffers from dizziness, nightmares, and migraine headaches as a result of this encounter.

      Karrick filed a Complaint on March 3, 2015, alleging that the use of force against him violated his right under the Eighth Amendment to the Constitution to be free from cruel and unusual punishment. He named the correctional officers who used force against him and the Warden of the facility as defendants in their individual and official capacities. He now seeks declaratory relief and monetary damages.

1

This matter is currently before the court for the screening required by the Prison Litigation Reform Act ("PLRA") and for consideration of Karrick's Motion for Appointment of Counsel and his Motion for Copies of Documents. After considering the various filings in this matter, the court will grant Karrick's Motion for Copies of Documents and deny his Motion for Appointment of Counsel. Additionally, the court finds that Karrick's Eighth Amendment claim will be allowed to proceed against Defendants Applewhite, Rivers, Shannweiler, and Hunt in their individual capacities. However the undersigned magistrate judge recommends that the district court dismiss Karrick's claims against the Defendants in their official capacities because they are barred by Eleventh Amendment immunity. The undersigned also recommends that the district court dismiss claims against Warden Washington in his individual capacity because the Complaint fails to allege his personal involvement in the alleged constitutional violations.

I.  Screening Pursuant to the Prison Litigation Reform Act.

    A.  Overview of Screening Process

The Prison Litigation Reform Act of 1996 ("PLRA") requires courts to review, prior to docketing, actions filed by prisoners against governmental entities or officials. 28 U.S.C. § 1915A(a). The purpose of this review is to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. The court must examine the pleadings, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* at § 1915A(b).

The court may dismiss a complaint as frivolous due to either legal or factual shortcomings. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A cause of action is legally frivolous if it is "based upon an indisputably meritless legal theory and include[s] claims of

infringement of a legal interest which clearly does not exist." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). A complaint is factually frivolous when its factual allegations are "fanciful, fantastic, and delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).

Malicious suits are those that constitute an abuse of the judicial process. This abuse can take a number of forms: repeated filings of the same legally insufficient claims, *Ball v. Bristol City Sheriff's Dep't*, No. 7:10-CV-00350, 2010 WL 3199920, at *2 (W.D. Va. Aug. 12, 2010); knowingly submitting a pleading that contains demonstrably false factual statements, *Galeas v. Byrd*, No. 3:11-CV-543-RJC, 2011 WL 6370373, at *3 (W.D.N.C. Dec. 20, 2011), *aff'd*, 469 F. App'x 236 (4th Cir. 2012); filing claims that are duplicative of pending litigation, *Pittman v. Moore*, 980 F.2d 994, 994–95 (5th Cir. 1993); or submitting a pleading that contains threats or demeans the court, *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981).

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Karrick's status as a *pro se* party relaxes, but does not eliminate, the requirement that his complaint contain facially plausible claims. The court must liberally construe a *pro se* plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Finally, the court may dismiss a complaint if it seeks monetary relief from a defendant who is immunized from liability for monetary damages. This immunity can take any number of forms, including, but not limited to, immunity under the Eleventh Amendment, *see Board of*

3

*Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), or common-law doctrines such as judicial, legislative, and prosecutorial immunity, *see Pierson v. Ray*, 386 U.S. 547 (1967).

### B. Review of § 1983 Claim

Karrick's claim arises out of 42 U.S.C. § 1983, which creates civil liability for any person acting under the color of state law who deprives a plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Therefore, in order to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Here, Karrick claims that the Defendants violated his rights under the Eight Amendment to the Constitution. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. *Williams v. Benjamin*, 77 F. 3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Albers*, 475 U.S. at 320–21.

### A. Official Capacity Claims

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign States." U.S. Const. amend. XI. The amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531 U.S. at 363. The Supreme Court has held that this immunity extends to suits brought by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Additionally, state agencies and officials sued in their official capacities are entitled to immunity under the Eleventh Amendment because they are merely alter egos of the state itself. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Edelman*, 415 U.S. at 666–68.

Here, Karrick has named agents of the North Carolina Department of Public Safety as Defendants in their official capacity. Suits against state officers in their official capacities are considered suits against the state and are barred by the Eleventh Amendment. *See Myers v. North Carolina,* No. 5:12–CV–714–D, 2013 WL 4456848, at *3 (E.D.N.C. Aug. 16, 2013) ("State agencies and state officials acting in their official capacities also are protected against a claim for damages because a suit against a state office is no different from a suit against the state itself.") (citing *Regents of the Univ. of Cal.*, 519 U.S. at 429; *Will,* 491 U.S. at 71; *Edelman*, 415 U.S. at 666–68; *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005)). Although Eleventh Amendment immunity can be waived by a state or abrogated by Congress, *see Will*, 491 U.S. at 66, there is no indication that either exception is applicable in

5

this case. Therefore, the Defendants, in their official capacities, are immune from Karrick's claims for monetary relief and those claims should be dismissed.

## B. Individual Capacity Claims

Karrick also seeks to hold the Defendants liable in their individual capacities for the alleged violation of his constitutional rights. Given the allegations in the Complaint, it is appropriate to allow his Eighth Amendment claim to proceed against Defendants Applewhite, Rivers, Shannweiler, and Hunt. However, the Complaint fails to contain allegations establishing that Warden Washington was either personally involved in the altercation that forms the basis for Karrick's claim for relief or that Warden Washington can be held liable on a theory of supervisory liability. Therefore, the undersigned recommends that the district court should dismiss the claims against Warden Washington in his individual capacity.

Karrick alleges that Defendants Applewhite, Rivers, Shannweiler, and Hunt entered his cell and proceeded to punch him, choke him, and slam him into the edge of his steel bed, knocking him unconscious and causing a laceration on his head that required him to be transported to a local hospital for treatment. The court is satisfied that these allegations are sufficient to state a claim for a violation of his Eighth Amendment rights. Karrick's Eighth Amendment claims against these defendants in their individual capacity will be allowed to proceed.

However, the Complaint does not allege that Warden Washington was personally involved in the events which led to Karrick's injuries. Washington cannot be held liable under § 1983 simply because he is the supervisor of individuals who may have violated a plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("The doctrine of respondeat superior has no application under this section.") Instead, a successful individual capacity claim

6

must allege that the defendant was personally involved in the deprivation of Karrick's rights. *Id.* The Complaint fails to do so.

In light of the failure to allege that Washington was personally involved in the incident in his cell, Karrick can only maintain an individual capacity claim under a theory of supervisory liability. In order to establish supervisory liability under § 1983, a plaintiff must allege and show that

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

In this case, Karrick failed to sufficiently allege that Washington had knowledge of "a pervasive and unreasonable risk" of constitutional injury. *Shaw*, 13 F.3d at 799. In order to satisfy this element, the Complaint must contain sufficient factual allegations to establish "that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.*; *see also Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (supervisory liability requires "a history of widespread abuse").

Here, the Complaint does not contain the necessary allegations to establish Washington's supervisory liability. Instead, Karrick's claim against Washington is based solely upon the circumstances of the altercation in his cell. A single incident or a series of isolated incidents are insufficient to establish supervisory liability under § 1983. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Given Karrick's inability to state a claim against Washington in his individual

7

capacity due to either personal involvement or supervisory liability, Washington should be dismissed from this suit.

Karrick also makes a passing allegation that Washington violated his due process rights in connection with the grievance process. However, there is no constitutional right to a grievance process. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Thus, to the extent that Karrick sought to bring a claim against Washington in connection with the grievance process, such a claim should be dismissed as frivolous.

## II. Motion to Appoint Counsel

As for Karrick's motion for appointment of counsel (D.E. 3), there is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional cases." *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (quoting *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982)); *see also Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him."). Karrick's action is not complex, and he has demonstrated through the detail of his filings that he is capable of proceeding *pro se*. As such, this case is not one in which exceptional circumstances merit appointment of counsel. Therefore, Karrick's motion requesting that he be appointed counsel is DENIED.

8

### III. Motions for Documents

Finally, Karrick requests that he be provided copies of his pleadings or other papers filed by him in this action because he lacks access to copying means while in segregation. D.E. 12. The Clerk of Court is directed to mail copies of the Complaint and motions Karrick filed to him at the address on file with the Clerk's Office.

### IV. Conclusion

As discussed above, the Court orders as follows:

1. The court will allow Karrick's individual capacity claims against Defendants Applewhite, Rivers, Shannweiler, and Hunt to proceed.

2. Karrick's Motion for Appointment of Counsel is denied.

3. The Clerk of Court shall send copies of the documents filed by Karrick in this action to him at the address on file with the Clerk's Office.

4. The Clerk of Court shall proceed with management of this action under the provisions of Standing Order 14-SO-02 regarding service of process upon current and former employees of the North Carolina Department of Public Safety.

5. If service on the Defendants pursuant to the standing order fails, the court directs the United States Marshal Service to make service pursuant to 28 U.S.C. § 1915(d).

Furthermore, the undersigned recommends that the district court dismiss Karrick's claims against Washington in their entirety and dismiss his claims against Defendants Applewhite, Rivers, Shannweiler, and Hunt in their official capacities.

The Clerk of Court shall serve a copy of this Order and Memorandum and Recommendation on plaintiff. Plaintiff shall have until 14 days after service of the Memorandum and Recommendation on plainitff to file written objections to the Memorandum

and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, he will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar him from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: September 17, 2015

*Robert T. Numbers II*
_____
Robert T. Numbers, II
United States Magistrate Judge